IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ZAKIYA W. CALLOWAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:22-cv-374 |
| | ) |
| THE COUNTY OF POWHATAN, VIRGINIA, | ) |
| | ) |
| Defendant. | ) |

## AMENDED COMPLAINT

COMES NOW the Plaintiff, Zakiya W. Calloway (hereinafter "Plaintiff" or "Calloway"), and as her Complaint against the Defendant, the County of Powhatan, Virginia (hereinafter "Defendant" or "the County"), sets forth the following allegations:

## INTRODUCTION

1. This Complaint presents civil claims alleging racial discrimination and retaliation against Defendant in violation of the Virginia Human Rights Act, Virginia Code Section 2.2-3900 et seq., and violations of Virginia public policy.

## PARTIES

2. Plaintiff is a citizen of the United States of America and a resident of North Chesterfield, Virginia.

3. At all times relevant to this Complaint, Plaintiff was employed with the Powhatan County Department of Social Services as a Family Services Specialist.

4.      Defendant is a corporate body and a political subdivision of the Commonwealth of Virginia. Defendant is an "employer" as defined by Virginia Code Section 2.2-3905(A), and is thus covered by, and subject to, the provisions of the Virginia Human Rights Act.

## JURISDICTION AND VENUE

5.      This action seeks declaratory judgment, compensatory damages, and attorneys' fees for Defendant's violations of state law.

6.      This Court has jurisdiction pursuant to Virginia Code Section 17.1-513, because Plaintiff's claims are civil in nature and arise from events that occurred within the Commonwealth of Virginia. This Court has jurisdiction over the claims in these actions arising under the laws of the Commonwealth of Virginia.

7.      This Court has jurisdiction over Defendant under Virginia Code Section 8.01-328.1, because Defendant conducts business within the Commonwealth of Virginia.

8.      Venue is proper under Virginia Code Section 8.01-257 et seq., because the City of Richmond is a forum convenient to the parties and the witnesses. The events giving rise to Plaintiff's claims occurred in Virginia within the division and district of this Court.

9.      Plaintiff has satisfied the procedural and administrative requirements of Virginia Code Section 2.2-522, and all conditions precedent to the filing of this suit have been performed or have occurred:

    a.      Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Office of the Attorney General ("OAG") for the Commonwealth of Virginia against the Defendant on or about July 28, 2021, styled EEOC Charge Number 438-2021-01314 ("the Charge").

      b.      The Charge alleged discrimination and retaliation based on race in violation of Title VII and the Virginia Human Rights Act.

      c.      On August 25, 2021, the EEOC issued a Notice of Right to Sue ("Notice") to Plaintiff, in which the EEOC determined that it would not proceed further with its investigation and made no determination about whether further investigation would establish violations of the statute.

      d.      This Complaint was filed within ninety days of Plaintiff's receipt of the Notice and determination, in accordance with Plaintiff's rights pursuant to Virginia Code Sections 2.2-3907 and 2.2-3908.

## FACTS

10.    Calloway (African American female) began her employment with the Powhatan County Department of Social Services ("DSS") in 2003 as a Social Worker. Shortly thereafter, her title was changed to Family Services Specialist.

11.    Over the course of Calloway's employment, her performance either met or exceeded expectations and she received merit compensation increases with no disciplines or negative feedback.

12.    Despite her exemplary performance, Calloway became the subject of increased scrutiny in 2019. Specifically, Ms. Sharon Rochelle (Caucasian), Director of DSS, harbored racial animus against Calloway and stated to Calloway's supervisor, Lynnett Murphy, former Service Programs Manager, on multiple occasions that Calloway "needed to go," but did not provide a reason for this assertion.

13. In 2019, Rochelle was also heard referring to another African American woman in a derogatory way after she did not receive a promotion that she had applied for and it was given to the African American woman.

14. In January 2020, Murphy's employment was terminated. She filed a grievance regarding her termination in February 2020.

15. Calloway was listed as a witness, and was instructed by her supervisors to provide testimony favorable to the County and against Murphy. When Calloway resisted this pressure from her supervisors, she was subjected to increased scrutiny.

16. As an employee of the County, Calloway is required to testify truthfully and under oath at the hearings.

17. Rochelle acted on her discriminatory animus by revoking Calloway's responsibilities concerning the Adult Protective Services ("APS") program. Rochelle reassigned the APS caseload from Calloway to Ms. Meghan Carroll (Caucasian).

18. When Murphy discussed the shifting of duties with Rochelle, she reiterated that Calloway was successful in handling the APS caseload and should continue to do so. She also expressed that Carroll was not a good fit for those duties.

19. In addition, Carroll also told others she felt uncomfortable with the situation and how it occurred. Nevertheless, Rochelle stripped Calloway's responsibilities anyway.

20. On March 30, 2020, Calloway received an email from Rochelle with the state's Adult Program Review and a request to develop a Corrective Action Plan within thirty (30) days.

21. During the course of her grievance, Murphy was informed that the review had noted that the program was "100 percent out of compliance" and that she had approved and closed cases without the requisite documentation. The County Attorney advised that, even if

Murphy was successful in her grievance, she would immediately be terminated again because of these issues.

22. Notably, while the program was cited for improvement, the citation was issued to the agency and not to Calloway personally.

23. As instructed, Calloway subsequently developed a comprehensive CAP and submitted it within the stated timeframe. Calloway's plan included four steps and shifted oversight of the program.

24. On June 3, 2020, Calloway received an email stating that the CAP was received and approved as written. Marjorie Marker, Senior Program Consultant for the Virginia Department for Aging and Rehabilitative Services ("VDARS"), further noted that Calloway did an excellent job in preparing the CAP.

25. On July 27, 2020, Calloway received an email from Rochelle requesting to meet with her, Carroll, and a representative from Human Resources on August 4, 2020. Calloway was informed at this time that Powhatan DSS was cited by Virginia DSS as being "out of compliance in numerous areas," and further that the citation was "solely her fault," despite the fact that she was only responsible for APS/AS.

26. The meeting was subsequently rescheduled to August 11, 2020 at Carroll's request.

27. On August 6, 2020, Calloway's doctor removed her from work through September 7, 2020. Calloway informed Carroll of her doctor's mandate.

28. On September 3, 2020, Calloway informed Carroll that her doctor was reviewing her return to work authorization, and later that her doctor had referred her to a specialist for

further testing. Her primary physician accordingly submitted her FMLA paperwork to Powhatan County Human Resources.

29. On the same day, Carroll mailed a certified letter to Calloway informing her that her job duties were being changed and no longer included APS. The letter asserted:

> This decision was made due to several factors, which we can discuss in further detail when you return. There were several assignments, which included a VDSS Corrective Action Plan, that you had been directed to complete. However, due to your sudden requests for FMLA and leave, this was left unfinished for several months.

In addition, the letter mandated that Calloway return to work in person and that she was no longer permitted to work virtually as previously approved.

30. Calloway was never issued any disciplinary action or write up and Carroll offered no support or suggestions as to how she could help Calloway succeed before stripping her of her APS duties.

31. On September 11, 2020, an APS complaint was reported to Calloway from the Powhatan Sheriff's Office regarding allegations of sexual assault. Calloway informed the Investigator that she was on medical leave and to contact the office to report it. The complaint was also referred to the Powhatan DSS from the state hotline. Based on Calloway's knowledge and involvement in the community, the local DSS never followed up on the report.

32. Over the course of the next month, Carroll and Rochelle continued to harass Calloway during her protected FMLA leave. They continued to contact Calloway, requiring her to complete work responsibilities although she was on medical leave as requested by her physician.

33. Calloway was subsequently informed by Murphy, when she returned to work, that she possessed evidence that Rochelle did not want Calloway at work due to her race.

34. On October 12, 2020, Calloway informed Carroll that she was involuntarily resigning due to the discriminatory treatment and hostile work environment she had experienced.

35. On October 26, 2020, Calloway sent an email to the Board of Social Services containing her complaint regarding the discriminatory treatment she received during her employment with the County.

36. The County never followed up with Calloway regarding her complaint or investigated her claims.

37. Following Calloway's involuntary termination, Calloway discovered that Carroll had provided a negative reference to her new employer, indicating that her performance was poor and that she was not eligible for rehire.

38. There is no legitimate reason why Calloway would not be eligible for rehire – she never received an unfavorable performance review and in fact had many years of excellent performance reviews.

39. As a result of Carroll's untruthful negative reference, Calloway had to undergo a hearing at her new position with the state to determine why she felt she was eligible for hire as a state employee.

## COUNT I:
## VIOLATION OF VIRGINIA PUBLIC POLICY

40. Calloway hereby incorporates each of the above paragraphs as though fully set forth herein.

41. Calloway was entitled to testify truthfully under oath at her coworker's hearing.

42. Defendant violated public policy when it instructed Calloway to provide evidence favorable to the County and violate her requirements to testify truthfully under oath.

43. Defendant retaliated against Calloway by removing job responsibilities, subjecting her to increased scrutiny and unwarranted discipline, and constructively discharging her, after she refused to perjure herself at Murphy's hearing.

44. Defendant ultimately made Calloway's working conditions so volatile and abusive that she was constructively discharged from her position.

45. As a direct and proximate result of Defendant's actions, Calloway has suffered, and continues to suffer, injury, including past and future loss of income and benefits of employment, other past and future pecuniary losses, severe emotional pain and suffering, mental anguish, humiliation, medical expenses, litigation expenses, attorneys' fees, and other injury.

## COUNT II:
## RETALIATION IN VIOLATION OF THE VIRGINIA HUMAN RIGHTS ACT

46. Calloway hereby incorporates each of the above paragraphs as though fully set forth herein.

47. After Calloway complained of discrimination, Defendant represented to others that she was not eligible for rehire, which interfered with her new position.

48. Defendant, through its members, supervisors, employees, and agents, retaliated against Calloway when it represented to her prospective employer that she was not eligible for rehire, in an effort to prevent her from obtaining employment.

49. As a direct and proximate result of this retaliation, Calloway has suffered, and continues to suffer, injury, including past and future loss of income and benefits of employment, other past and future pecuniary losses, severe emotional pain and suffering, mental anguish, humiliation, medical expenses, litigation expenses, attorneys' fees, and other injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Zakiya W. Calloway requests the following relief:

A. Entry of judgment in favor of Plaintiff on Counts I and II;

B. Lost wages and benefits, plus six percent interest pursuant to Virginia Code Section 6.2-302, for Counts I and II;

C. Compensatory damages in an amount to be proven at trial, plus six percent interest pursuant to Virginia Code Section 6.2-302, for Counts I and II;

D. Other remuneration as allowed;

E. Plaintiff's attorneys' fees and costs of this action; and

F. Any and other such further relief that this Court deems appropriate.

## **JURY DEMAND**

A TRIAL BY JURY IS DEMANDED.

Respectfully Submitted,
Zakiya W. Calloway

By Counsel

_____

Barbara A. Queen (VSB No. 47314)
Kyle Matykowski (VSB No. 82397)
LawrenceQueen
701 East Franklin Street, Suite 700
Richmond, Virginia 23219
Telephone: (804) 643-9343
Facsimile: (804) 643-9368
*bqueen@lawrencequeen.com*
*kmatykowski@lawrencequeen.com*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th of June 2022, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
Telephone: (804) 747-5200
Facsimile: (804) 747-6085
*jcapps@hccw.com*
*myork@hccw.com*

Thomas E. Lacheney (VSB No. 35588)
Deal & Lacheney, P.C.
3834 Old Buckingham Road, Suite A
Powhatan, VA 23139
Telephone: (804) 598-5691
Facsimile: (877) 457-1231
*tlacheney@powhatanva.us*

*Counsel for Defendant*


_____/s/_____
Barbara A. Queen (VSB No. 47314)
LawrenceQueen
701 E. Franklin Street, Suite 700
Richmond, VA 23219
Telephone: (804) 643-9343
Facsimile: (804) 643-9368
bqueen@lawrencequeen.com

*Counsel for Zakiya Calloway*